# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOHNNIE LEE JORDAN, JR.,

       Petitioner,

-vs-                                                                    Case No.  8:16-cv-1204-T-36CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("petition") (Doc. 1).  Respondent filed a response in opposition to the petition (Doc. 15), to which Petitioner replied (Doc. 73).  Upon consideration, the petition will be denied.

## I. BACKGROUND

Petitioner was convicted of attempted first-degree murder and aggravated battery involving great bodily harm (Respondent's Ex. 1, record pp. 14-15).  He was sentenced to life in prison on the attempted murder conviction and 30 years on the aggravated battery conviction (*Id.*, record pp. 19-24).   The convictions and sentences were affirmed on appeal (Respondent's Ex. 4).

Petitioner filed a motion for post-conviction relief under Rule 3.850, Fla. R. Crim. P., alleging ineffective assistance of trial counsel, which he subsequently amended (Respondent's Ex. 6).  Claim four of the motion was denied, and an evidentiary hearing was scheduled on the remaining grounds (Respondent's Ex. 7).  The remaining grounds were denied after the evidentiary hearing (Respondent's Ex. 8).  The denial of the motion was affirmed on appeal (Respondent's Ex.

14).

Petitioner filed a motion under Rule 3.800(a), Fla.R.Crim.P., in which he argued that his sentence was illegal (Respondent's Ex. 17). The motion was denied (Respondent's Ex. 18), and the denial was affirmed on appeal (Respondent's Ex. 19).

Petitioner filed his federal habeas petition in which he raises eight grounds for relief (Doc. 1).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 *U.S.C. § 2254(b)(1); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the

federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

### III. ANALYSIS

**Ground One**:　　　　　**PROSECUTOR KNOWINGLY UTILIZED PERJURED TESTIMONY**

Petitioner contends that he was denied due process when the prosecutor knowingly presented false testimony. Specifically, he alleges that the prosecutor knew Officer McCoy's testimony that Maria Miller had identified Petitioner from a "photopak lineup" as the person who shot the victim was false. He appears to further allege that Officer McCoy falsely testified that Miller identified Petitioner as the shooter when she was brought to see him "in person."

This claim fails because Officer McCoy did not testify that Miller identified Petitioner as the shooter (Respondent's Ex. 8, Vol. III, transcript pages 261-69). Although Officer McCoy testified that Octavia Williams identified Petitioner from the photopak (*id*., transcript pp. 263-64, 266), she testified that Miller did not identify Petitioner from the photopak because she could not be "100 percent" certain it was Petitioner, since Petitioner is smaller than he appeared in his photograph in the photopak (*Id*., transcript pp. 266-68). And although Officer McCoy testified that she had an officer bring Petitioner to Miller to show him to her in person, she did not state that Miller identified Petitioner as the shooter at that time (*Id*., transcript p. 269).

"In *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where 'the false testimony could in any reasonable likelihood have affected the judgment of the jury.'" *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1107 (11th Cir. 2012) (quoting *Giglio*, 405 U.S. at 154). Because Petitioner has failed to demonstrate that Officer McCoy gave false testimony, his *Giglio* claim fails. *See, e.g., Jones v. Hetzel*, 2017 WL 4618157, at *2 (S.D. Ala. Oct. 16, 2017), *certificate of appealability denied*, 2018 WL 2246586 (11th Cir. Mar. 14,

2018) ("Because a *Giglio* violation requires proof that the prosecution presented false testimony, and because the Rule 32 judge properly found Booker did not offer false testimony, the petitioner's only claim fails as a matter of law.").  Accordingly, Ground One warrants no relief.

**Ground Two**:     **INEFFECTIVE ASSISTANCE OF COUNSEL FAILURE TO DISCLOSE SWORN WRITTEN STATEMENT PRIOR TO TRIAL COMMITTING DISCOVERY VIOLATION**

Petitioner contends that defense counsel was ineffective in failing to notify the trial court that the prosecutor failed to disclose "Markese White's sworn written affidavit statement" during discovery after counsel had requested it.  He further alleges that counsel "misled" him when he stated that Officer Spatola's police report was White's sworn written statement.  Petitioner further contends that he was denied due process during the state post-conviction evidentiary hearing when the post-conviction court used a police report rather than White's written statement to deny this claim.

Petitioner's ineffective assistance of counsel claim was raised in Ground Seven of his Rule 3.850 motion (Respondent's Ex. 6, record pp. 200-02).  In denying the claim, the state post-conviction court stated:

> In claim seven, Defendant alleges ineffective assistance of counsel for failing to inform Defendant of a discovery violation. Specifically, Defendant alleges that the State and counsel led him to believe that Markese White's initial statement to police officers was the same as the sworn written statement Mr. White made later in the day. Defendant alleges that the State failed to provide him a copy of the written statement and that counsel failed to obtain a copy of the written statement. At the evidentiary hearing, Defendant identified the statement as the one made to Officer Spatola on September 3, 2009. (*See* Transcript, Aug. 13, 2013, p. 56).

> Mr. James testified at the evidentiary hearing that the sworn statement was part of the police report and that the police report was provided to Defendant. (*See* Transcript, Aug. 13. 2013, p. 97, 99). Mr. James testified the letter written to Defendant indicating that he did not provide the sworn statement was done in error. (*See* Transcript, Aug. 13, 2013, p. 98; Exhibit 12, attached).

8

The Court finds that the record supports Mr. James' testimony. The statement made by Markese White to Officer Spatola was entered into evidence as Exhibit 10. (*See* Exhibit, 10, attached). The statement is page 40 of a Tampa police department report. Paragraph 8 of the State's Notice of Discovery indicates the report was provided as part of discovery. (*See* Notice of Discovery, attached). Thus, there was no discovery violation and counsel's performance was not deficient for failing to inform Defendant of such a violation. **Accordingly, Defendant is not entitled to relief on claim seven.**

(Respondent's Ex. 8, Vol. I, pp. 9-10) (emphasis in original).

Petitioner appears to complain that counsel was deficient in failing to alert the trial court that the State never provided the defense with the hand written statement White gave to law enforcement on September 3, 2009 (*see* Doc. 1-2, docket p. 39). The statement, according to Petitioner, is not the same statement that White gave to Officer Spatola earlier that night which was documented in Officer Spatola's police report (*see* Respondent's Ex. 8, record p. 551).

Petitioner has failed to demonstrate that counsel was deficient in failing to notify the trial court that the State failed to provide White's written statement because he has not shown that counsel was aware of the written statement at the time of Petitioner's trial in February 2010. It is apparent from defense counsel's testimony during the evidentiary hearing on Petitioner's Rule 3.850 motion that counsel believed White's statement was part of the police report, and the police report had been provided to Petitioner (*Id.*, record pp. 453-56). Counsel's February 14, 2011 letter to Petitioner indicates that White's written statement "was never provided by the State during the discovery process." (*Id.*, record p. 548). Petitioner himself testified that he did not receive White's written statement until two years later when he wrote the State Attorney's Office and received the statement in response (*Id.*, record p. 415). Defense counsel was not ineffective in failing to notify the trial court regarding a discovery violation of which he was not aware.

Even if Petitioner could somehow show that counsel was deficient, he has failed to allege,

9

let alone demonstrate, prejudice. White's written statement provides:

> We [were] in the alley of the apartments of Jackson Heights playing dice [when] the older man that go by the name of baldy came up in at first he look around for like a minute then he pulled out a gun and shot at Leslie and he chase Leslie and shot several more times and I ran away. I ran into the apartments, ran to the outside and I found Leslie in an alley behind a gate.

(Doc. 1-2, docket p. 39). The statement was not favorable to Petitioner, since it identified Petitioner, who was known as "Baldy," as the person who shot the victim. And it was consistent with the recorded statement White gave to Officer Torres in which White indicated, in pertinent part, that he was playing dice with others behind the apartments when Petitioner approached the group, pulled a gun out and pointed it at them, and fired shots at and chased after the victim (Respondent's Ex. 6, record p. 139).

Suppression of evidence by the prosecution denies a defendant due process only if the evidence is favorable to the defense and material, *i.e.*, there is a reasonable probability that if the evidence was disclosed, the result of the trial would have been different. *See Stephens v. Hall*, 407 F.3d 1195, 1203 (11th Cir.2005) (discussing *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Bagley*, 473 U.S. 667, 678 (1985), other citations omitted). White's written statement was neither favorable to the defense nor material. Accordingly, Petitioner cannot demonstrate that he was prejudiced by counsel's failure to notify the trial court that the State failed to disclose White's written statement.

The state courts' denial of this claim was not contrary to *Strickland*, and was not based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Two.

Finally, to the extent Petitioner contends that he was denied due process during the

evidentiary hearing on his Rule 3.850 post-conviction motion, the claim is not cognizable under § 2254 because a defect in a collateral proceeding, rather than the conviction or sentence, is unrelated to the cause of detention and does not state a claim for habeas corpus relief. *See Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir.2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir.1987) (petitioner's § 2254 claim that the state trial court violated his due process rights because it failed to conduct an evidentiary hearing and did not attach to its opinion denying relief those portions of the record on which it relied went to issues unrelated to the cause of petitioner's detention and did not state a basis for habeas relief). Accordingly, this claim warrants no relief.

**Ground Three:**  **WHETHER THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE IDENTIFYING THE APPELLANT AS THE PERPETRATOR**

Petitioner contends that his federal due process and equal protection rights were violated because there was insufficient evidence identifying him as the perpetrator of the crimes for which he was convicted. Respondent argues that this claim is unexhausted because Petitioner did not raise it as a federal claim on direct appeal. Respondent is correct that Petitioner presented this claim as one of state law in his Initial Brief on direct appeal (Respondent's Ex. 2, pp. x-xiii).

However, it may be possible to exhaust a federal sufficiency of the evidence claim by presenting an analogous state claim in state court when the state and federal courts apply the same standard of review. *Mulnix v. Sec'y for Dep't of Corr.*, 254 Fed. App'x 763 (11th Cir. 2007). The sufficiency of the evidence standard applied by federal courts, and applied by the state court in Petitioner's appeal, asks whether, after viewing the evidence in the light most favorable to the

prosecution, a rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Simmons v. State*, 934 So.2d 1100, 1111 (Fla. 2006). Accordingly, this Court assumes that Petitioner exhausted his federal claim challenging the sufficiency of the evidence with regard to identification.

Nevertheless, Respondent further contends that this claim is procedurally barred from review in this habeas action because Petitioner procedurally defaulted the claim in state court. Respondent argues that the issue of identity was procedurally defaulted in Petitioner's direct appeal because he failed to preserve the issue for appellate review, since he did not raise the issue during his motion for judgment of acquittal at trial. The Court agrees.

In Florida, in a failure of proof case, "the defendant must articulate the legal grounds in a motion for judgment of acquittal for an appellate court to review the issue." *Hornsby v. State*, 680 So. 2d 598, 598 (Fla. 2d DCA1996). At trial, defense counsel did not argue that there was insufficient evidence establishing the identity of the shooter (Respondent's Ex. 8, Vol. III, record pp. 680-84). Rather, defense counsel solely argued that there was insufficient evidence of premeditation (*Id.*). Accordingly, the issue of identity was not preserved for appeal and therefore was procedurally defaulted on appeal.

When the issue was raised on appeal, the State argued that the claim was procedurally barred (Respondent's Ex. 3, p. 7). The state appellate court's silent per curiam affirmance on direct appeal operates as an acceptance of the procedural bar. Where a claim is rejected without opinion, and the existence of a procedural bar is clear, federal courts on habeas review will not assume that the state appellate court would have reached the merits of the claim rather than rejecting it as being procedurally barred. *Creed v. Department of Corrections*, 330 Fed. App'x. 771, 772 (11th

Cir.2009). Petitioner does not show cause and prejudice to overcome his procedural default, and does not meet the miscarriage of justice exception. Accordingly, because the claim is procedurally barred, Ground Three is due to be dismissed.

Even if the claim were not procedurally barred, it would warrant no relief. In claiming that the State presented insufficient evidence identifying him as the perpetrator, Petitioner alleges that: 1) he testified that he did not have a gun; 2) he testified that he is not "Baldy," the name the witnesses to the shooting used to identify the perpetrator; 3) the victim did not identify Petitioner as the person who shot him; 4) the State's expert witness never testified that Petitioner shot the victim; 5) no gun was ever recovered by the police; 6) no finger prints were found on the bullet or shell casings that were recovered; 7) the gun-shot residue report stated that no residue was found on any samples taken from Petitioner; 8) the testimony of the two witnesses who allegedly saw the shooting, Markese White and Maria Miller, was inconsistent because White testified that the shooter was wearing a black shirt, bald, wearing nothing on his head, and was approximately 5'8" - 5'9" and 185 pounds, and Miller testified that the shooter was wearing a white shirt and a skull cap, identified the shooter as "Baldy" and "Baldhead," and was approximately 5'10"-5'11" and 200 pounds; and 9) crime scene photographs show that Petitioner was wearing a white tank top when he was taken into custody. But Petitioner does not address all the State's evidence.

There was ample evidence that Petitioner was the shooter. For example, White testified that while he, the victim, and others were at the apartment complex shooting dice, he saw Petitioner approach the group (Respondent's Ex. 8, Vol. II, transcript pp. 136-39). White looked at Petitioner for approximately five to seven seconds before he looked down at his cell phone (*Id*., transcript pp. 138-49). He then heard the sound of a gun cocking, saw Petitioner shoot the victim, and as he

started to run away, he saw Petitioner shooting at the victim several more times while chasing him (*Id*.). White previously had seen Petitioner in the neighborhood approximately two or three times (*Id*., transcript pp. 142). On the day of the shooting, White was shown some photographs from which he identified Petitioner as the shooter (*Id*., transcript pp. 151-52).

Miller was also an eyewitness to the shooting. She testified that after she heard a gun shot, she saw a man wearing a white shirt and blue jeans chasing after and shooting at the victim (*Id*., transcript pp. 158-60). She testified that the shooter was "Baldy," she had previously seen "Baldy" around the neighborhood approximately 2 to 3 times each week, she identified Petitioner as "Baldy," and she was "100 percent positive" that Petitioner was the man she saw chasing and shooting at the victim (*Id*., transcript pp. 161-68).

Petitioner has failed to show that the State did not meet its burden of proof. The State presented ample evidence that Petitioner was the shooter. *See, e.g., Brown v. State*, 13 So. 2d 3 (Fla.1943) (in murder prosecution, testimony of only eyewitness to effect that crime was committed by defendants was sufficient to sustain conviction). Accordingly, Petitioner has failed to establish that, considering the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the State proved Petitioner was the shooter beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319.

Because Petitioner's claim is procedurally barred, and he has not shown that the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination, he is not entitled to relief on Ground Three.

**Ground Four:** **WHETHER THE STATE'S EVIDENCE OF PREMEDITATION WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR**

## ATTEMPTED FIRST DEGREE MURDER

Petitioner contends that he was denied due process and a fair trial because the State presented insufficient evidence to support his conviction for attempted first-degree murder. Specifically, he argues that there was no evidence establishing the element of premeditation.

Respondent argues that this claim is unexhausted and now procedurally barred because Petitioner failed to raise the federal constitutional dimension of this claim either at trial or on direct appeal. The Court agrees.

Petitioner did not fairly present a federal constitutional violation to the state courts with regard to this claim. A petitioner must present each claim to a state court before raising the claim in federal court. "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in state courts." *Henderson*, 353 F. 3d at 891 (citation omitted). "The AEDPA requires a state prisoner to exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding." *Pearson v. Secretary, Dept. of Corrections*, 273 Fed. App'x. 847, 849 (11th Cir. 2008). As *Pearson* notes, federal claims must be presented in a manner that alerts the state court that "the ruling under review violated a federal constitutional right." *Id.* at 849-50. "A state prisoner does not 'fairly present' a claim to a state court if that court must read beyond. . .a brief" to find the federal claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Petitioner's Initial Brief on direct appeal did not fairly present a federal constitutional claim (Respondent's Ex. 2, Initial Brief, pp. xiv-xv). The brief cited solely to state cases, none of which were decided on federal grounds (*Id.*). The state cases relied on Florida's heightened burden of proof in cases involving circumstantial evidence. Petitioner did not indicate in any way that he

intended to raise a federal claim. He therefore failed to exhaust a federal claim because nothing in his arguments alerted the state courts to the presence of a federal claim. *See Pearson*, 273 Fed. App'x. at 850.[2] *See also, Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 451 (11th Cir. 2015) (finding petitioner was procedurally barred in federal court from raising 14th Amendment due process claim based on state's failure to present sufficient evidence of premeditation where in state court he "brought only a state sufficiency of the evidence claim, and relied on Florida's heightened burden of proof in cases involving circumstantial evidence[,]" and therefore "did not fairly present his federal claim to the Florida courts[.]"). Consequently, Petitioner is procedurally barred from raising Ground Four in his federal habeas petition.[3] Accordingly, Ground Four warrants no relief.[4]

| Ground Five: | TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO TRY OR CONVICT DEFENDANT FOR CRIMES HE SHOULD NOT HAVE BEEN PROSECUTED FOR UNDER FLORIDA RULES OF CRIMINAL PROCEDURE[5] |

---

[2]It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his federal claim because it could have and should have been raised on direct appeal. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court). Florida's state procedural rules precluding a second direct appeal, and the time limitations for bringing an appeal, bar Petitioner's returning to state court to present the claim. *See* Fla. R. App. P. 9.110(b).

[3]Petitioner has not alleged or shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has not alleged or shown that he is entitled to the fundamental miscarriage of justice exception.

[4]Even if the claim were not procedurally barred, it would fail on the merits for the reasons argued by Respondent (*see* Doc. 15, pp. 19-20). There was sufficient evidence proving premeditation, including the evidence that showed Petitioner used a gun and fired multiple times while he chased the victim. *See, e.g., Morales v. State*, 170 So. 3d 63 (Fla. 1st DCA 2015) (State presented sufficient evidence that defendant acted with premeditation in shooting victim where victim testified that, after he exchanged words with occupants of vehicle, the vehicle drove on a "bit" and then stopped, defendant exited the vehicle and began shooting, and eye witness testified that shooter fired gun multiple times and that, before car sped off, the shooter got back in the car and fired another shot).

[5]Petitioner titled this claim as though it was a lack of jurisdiction claim, but the substance of the claim is ineffective assistance of trial counsel.

16

Petitioner contends that trial counsel was ineffective in failing to dismiss the Information as "fundamentally defective and fraudulent." He appears to allege that trial counsel knew the Information was "fundamentally defective and fraudulent" because he knew that the prosecutor lied when swearing under oath that "he received sworn testimony from a material witness to charge the petitioner." (Doc. 1, docket p. 13).

This claim was raised in state court in Ground One of Petitioner's May 17, 2012 Rule 3.850 motion (Respondent's Ex. 6, record pp. 206-12). In denying this claim after the evidentiary hearing, the state post-conviction court stated:

> In his May 17, 2012 motion, Defendant alleges ineffective assistance of counsel for failing to move to dismiss the charging document based on a lack of subject matter jurisdiction where counsel knew the State Attorney "lied under oath" in the information and where counsel knew the charges alleged in the information did not "coincide" with the "sworn affidavits collected from witnesses."
>
> At the evidentiary hearing, several exhibits were entered into evidence refuting this claim. In particular, Exhibit 5A, the Criminal Report Affidavit, indicates that Defendant was identified by photopak. (*See* Exhibit 5A, attached). Exhibit 5, the statement from Octavia Williams, identifies Defendant as the person leaving the scene and making an incriminatory statement. (*See* Exhibit 5, attached). Exhibit 10 in part, the statement made by Markese White, indicates "Johnny" was the shooter. Mr. James testified that he did not think he had a legal basis to move dismiss the information. (*See* Transcript, Aug. 13, 2013, pp. 99- 101). Upon the review of the exhibits introduced at the evidentiary hearing, the Court finds that counsel did not have a legal basis upon which to move to dismiss the information. **Accordingly, Defendant is not entitled to relief on his "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Fla. R. Crim. P. Rule 3.850(a)," filed May 17, 2012.**

(Respondent's Ex. 8, Vol. I, record p. 353) (emphasis in original).

Rule 3.140(g), Fla.R.Crim.P., provides, in pertinent part, that:

> An information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense.

The Information in Petitioner's case was signed by an assistant state attorney under oath, and indicated that "the prosecution is being instituted in good faith" and the allegations in the Information "are based upon facts that have been sworn to as true by the material witness or witnesses. . . ." (Respondent's Ex. 1, record p. 27). Accordingly, the Information complied with the mandates of Rule 3.140(g).

Petitioner alleges that defense counsel knew that the assistant state attorney lied when he swore that the allegations in the Information were based on facts sworn to as true by the witnesses. Petitioner, however, does not support this allegation with any evidence. And the state post-conviction court correctly found that the allegations of the Information were supported by sworn testimony from witnesses.

Octavia Williams gave a sworn statement indicating that after she heard gun shots, she saw Petitioner and heard him say "we got that fuck n****." (Respondent's Ex. 8, record p. 563). Markese White's statement indicates that after he saw Petitioner approach the victim and others who were "throwing dice," he turned away, heard a "glock cocking," and the group of people ran away in different directions (*Id.*, record p. 551). The victim's statement indicated that he was with others who were "playing cards and dicing," he started to run when he saw everyone else running, he heard 4 or 5 gun shots, and while running he realized that he had been shot and collapsed in a back yard (*Id.*).

Because the allegations of the Information were supported by sworn statements from witnesses to the crimes, the state post-conviction court's implicit determination that counsel did not render deficient performance in failing to move to dismiss the Information (since there was no "legal basis upon which to move to dismiss the information") is not contrary to *Strickland*. *See Williams*

*v. Sec'y, Fla. Dep't of Corr.*, 2016 WL 10749631, at *4 (11th Cir. July 27, 2016) (unpublished)

("Counsel's performance is not deficient because counsel failed to make a nonmeritorious motion.")

(citation omitted). Accordingly, Ground Five does not warrant federal habeas relief.

**Ground Six:** **FAILURE TO IMPEACH ALLEGED EYE WITNESSES WITH SIGNIFICANT CONTRADICTORY STATEMENTS GIVEN ON THE NIGHT OF THE ATTEMPTED MURDER, AND USE DEPOSITION TESTIMONY TO EXPOSE THOSE CONTRADICTORY STATEMENTS**

Petitioner contends that defense counsel was ineffective in failing to impeach crucial state

witnesses with evidence that would have shown that the witnesses' testimony lacked credibility and

validity, and was fabricated. Specifically, Petitioner alleges that counsel failed to impeach: 1) White

with his written sworn statement; and 2) Williams and Miller with their "prior contradictory

statements and deposition[s]."

This claim was raised in state court in Ground One of Petitioner's amended Rule 3.850

motion (Respondent's Ex. 6, record pp. 159-77). After the evidentiary hearing, the state post-

conviction court denied the claim as follows:

> In claim one, Defendant alleges ineffective assistance of counsel for failing to depose alleged eyewitnesses in order to reveal contradictory statements and for failing to impeach alleged eyewitnesses with their significant contradictory statements. In particular, Defendant alleges Markese White gave contradictory statements on the night of the crime and counsel failed to depose him or impeach him at trial. At the evidentiary hearing, Defendant testified that there [sic] inconsistencies between whether Mr. White saw a gun or just heard a gunshot. (*See* Transcript, Aug. 13, 2013, pp. 9-13). Next, Defendant alleges that Octavia Williams gave contradictory statements on the night of the crime and during depositions and counsel failed to impeach her. At the evidentiary hearing, Defendant testified the contradictions from Ms. Williams were whether she saw Defendant by himself or with another person, whether she heard him say "shot" or "got," and whether Ms. Williams knew Defendant. (*See* Transcript, Aug. 3, 2013, p. 20, 22-23, 25). Finally, Defendant alleges that Maria Miller gave contradictory statements on the night of the crime and during depositions and counsel failed to impeach her. At the evidentiary hearing, Defendant testified that Ms. Miller gave conflicting statements

about knowing Defendant. Furthermore, Ms. Miller could not identify Defendant in a photopak even though she testified she knew him and he used to sell her drugs. (*See* Transcript, Aug. 13, 2013, pp. 31-33, 35, attached).

As to Markese White, Defendant's former trial counsel, Ronnie James, testified at the evidentiary hearing that in cross- examining Mr. White, he was trying to bring out "the fact that there had been a prior statement where he said that he heard the sound of a gun initially, but never saw the person who had the gun." (*See* Transcript, Aug. 13, 2013, p. 77), Mr. James testified that he generally tried to establish that Mr. White identified Defendant because he knew him and not because Defendant committed the crime. (*See* Transcript, Aug. 13, 2013, p. 77). Mr. James also testified that he had attempted to depose Mr. White on several occasions, and that Mr. White ultimately showed up for the trial. (*See* Transcript, Aug. 13, 2013, p. 78).

As to questioning Octavia Williams, Mr. James testified that his strategy was to show misidentification and show her identification of Defendant as the shooter was based on past knowledge of Defendant and not on the incident itself. (*See* Transcript, Aug. 13, 2013, p. 79). Mr. James stated that when Defendant testified at trial, he admitted he was present at the scene. Therefore, some of Ms. Williams' testimony was not inconsistent with Defendant's testimony. (*See* Transcript, Aug. 13, 2013, p. 79). As to Maria Miller, Mr. James testified that he tried to bring out on cross-examination the fact that she could not make a definitive identification.

The Court finds that the alleged inconsistencies asserted by Defendant are minor in nature. The Court further finds Mr. James' testimony to be credible and finds that his testimony at the evidentiary hearing is consistent with the record. In particular, the trial transcript reveals that Mr. James did question Mr. White about his contradictory statements. (*See* Trial Transcript, pp. 145-153, attached). Thus, as to Mr. White, the Court does not find counsel's performance deficient.

As to Ms. Williams, the trial transcript shows Mr. James argued that all she really testified to was seeing Defendant walking past her—which was consistent with Defendant's own trial testimony. (*See* Trial Transcript, pp. 333-334, 386-387, attached). As to the alleged inconsistent statements, the record shows that Mr. James questioned Ms. Williams about what she heard, and Ms. Williams said she heard Defendant say, "we just *got*. . ." as opposed to "*shot*." (*See* Trial Transcript, p. 196, attached). The Court finds that Defendant has not demonstrated deficient performance or prejudice for counsel failing to inquire further into whether Ms. Miller had at some point asserted that Defendant said "I just shot one of [the victims]," (*See* Transcript, Aug. 13, 2013, p. 25). The Court notes that as to either version of what Ms. Miller [sic] heard, both include an inculpatory statement made by Defendant.

As to Ms. Miller, Mr. James established at trial that she knew several persons in the neighborhood who shaved their heads, and further established that Ms. Miller was unable to identify Defendant as the shooter in a photo lineup. (*See* Trial Transcript, pp. 165-166, attached). The jury was aware that while Ms. Miller recognized the shooter as "Baldy" and identified Baldy as Defendant in court, she was unable to pick Defendant's photograph out of a lineup. (*See* Trial Transcript, pp. 161-168, attached). Based on Ms. Miller's trial testimony, Mr. James was able to argue at trial that Ms. Miller was unable to identify Defendant's photo in the lineup even though she claims to have known him. (*See* Trial Transcript, p. 385, attached). Thus, counsel made the argument that Defendant is alleging counsel should have made via impeaching Ms. Miller with deposition testimony. In light of the testimony and arguments made at trial, the Court finds that Defendant failed to establish deficient performance or prejudice as to Ms. Miller. **Based on the reasons above, Defendant is not entitled to relief on claim one.**

(Respondent's Ex. 8, Vol. I, pp. 2-4) (emphasis in original). A review of the record supports the state court's conclusions.

**A. Markese White**

Petitioner asserts that counsel was ineffective in failing to impeach White with his prior "sworn written affidavit statement." However, as stated in Ground Two above, there is no indication from the record that counsel was even aware of White's written statement at the time of Petitioner's trial, and Petitioner indicates that the State did not provide that statement until sometime after the trial. Accordingly, counsel cannot be deficient in failing to impeach White with a statement he did not have.

Even if counsel had that statement, Petitioner has failed to show that counsel was deficient in failing to cross-examine White with it because the statement is consistent with White's trial testimony. In the statement White indicated that he, the victim, and others were playing dice in the alley of the apartment complex when "Baldy" approached them. "Baldy" pulled out a gun and shot at the victim, then chased and continued to shoot at the victim as the victim was running away. White ran away and subsequently found the victim (Doc. 1-2, docket p. 39). During trial White

testified that he was playing dice with the victim and others at the apartments when Petitioner approached them. White looked down at his cell phone, heard the sound of a gun cocking, then heard a gunshot and saw Petitioner shoot at the victim. He saw the victim running away and Petitioner chasing and shooting at him, then he ran away in the opposite direction (Respondent's Ex. 8, Vol. II, transcript pp. 136-56).

Because White's written statement and trial testimony are consistent, counsel was not deficient in failing to impeach White with the statement. Moreover, counsel impeached White with his prior statement to Officer Spatola to attempt to show that White had stated that he never saw the gun or who was shooting, but instead only heard a gun cocking and firing, and then he ran in the opposite direction from the victim (*Id.*, transcript pp. 147-53). Accordingly, the state court's decision that defense counsel was not deficient in his cross-examination of White was not objectively unreasonable.

**B. Octavia Williams**

In his petition Petitioner alleges that counsel was ineffective "when he failed to impeach Octavia Williams[] with her prior contradictory statements, and deposition." (Doc. 1, docket p. 15). He argues that had counsel impeached Williams with her prior statements and deposition testimony, the jury would have concluded that Williams' testimony that after the shooting she saw Petitioner with another man wearing a black shirt and heard Petitioner say "we just got that fucking n*****" was a "fabrication." (*Id.*).

As alleged in the petition, this claim is vague and conclusory because Petitioner has failed to state how Williams' prior statements and deposition testimony are inconsistent with her trial testimony. Petitioner's vague and conclusory allegations are insufficient to show that he received

ineffective assistance of counsel. *See Tejada v. Dugger*, 941 F. 2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Even viewing this claim in light of the record as a whole, the claim is without merit. During trial Williams testified, in pertinent part, that while at the apartment complex she heard six shots (Respondent's Ex. 8, Vol. II, transcript p. 191). As she was walking toward where the shots came from, she "walked into [Petitioner] and another guy." (*Id*.). She heard Petitioner say "we just got that fucking n*****." (*Id*., transcript pp. 192-93, 196). On cross-examination, when asked whether she "could. . .have mistaken they just shot or we just got?", she answered "no." (*Id*., transcript p. 196).

During her deposition Williams testified that she heard Petitioner say "Yeah, we just got that fuck n*****." (Respondent's Ex. 6, record p. 145). Her written statement to law enforcement indicated that Petitioner said "we got that fuck n****." (*Id*., record p. 134). And the officers' reports indicate that Williams said either "I got that fuck n****," "we got that fuck n****," or "he just shot one of those n****." (*Id*., record pp. 133, 36). Therefore, Williams' prior statements and deposition testimony are consistent with her trial testimony. At worst, there were minor inconsistencies in the exact words Petitioner uttered. And as the state post-conviction court stated, each version of the statement was inculpatory. Accordingly, the state court's decision that defense counsel was not deficient in his cross-examination of Williams on this issue was not objectively unreasonable. *See, e.g., Wilson v. Sec'y, Dep't of Corr.*, 2013 WL 1499549, at *7 (M.D. Fla. Apr. 12, 2013) ("Petitioner has not demonstrated that counsel was deficient for failing to impeach Hall on minor inconsistencies that did not completely contradict her trial testimony and could easily be

attributed to the lapse of time or differences in the manner she was questioned and recounted the events.").

### C. Maria Miller

Petitioner alleges that defense counsel was ineffective in "failing to impeach Maria Miller with her prior, contradictory statements and deposition." (Doc. 1, docket p. 16). He contends that had counsel so impeached Miller, the jury would have determined that Miller's "trial testimony, in court identification, and testimony about knowing the accused from the past, and seeing him shoot Jones" were fabricated (*Id.*).

This claim is vague and conclusory because Petitioner has failed to indicate how Miller's prior statements and deposition testimony are inconsistent with her trial testimony. Petitioner's vague and conclusory allegations are insufficient to show that he received ineffective assistance of counsel. *See Tejada*, 941 F. 2d at 1559.

Even viewing this claim in light of the record as a whole, the claim is without merit. During direct examination at trial, Miller testified that while at the apartment complex she heard a gunshot then saw "two kids running." (Respondent's Ex. 8, Vol. II, transcript p. 158). Then she saw a man with no shirt on running behind the two kids, and the man was running from another man who was shooting at him (*Id.*, transcript p. 159). She was approximately 30 to 40 feet from the man who was shooting (*Id.*). The shooter was wearing blue jeans, a white shirt, and a black skull cap (*Id.*). She heard 7 shots (*Id.*, transcript pp. 159-60). She identified the shooter as "Baldy" (*Id.*, transcript p. 161).

On cross-examination Miller testified that she told the officers that the shooter was approximately 5'10"-5'11" and 200 pounds (*Id.*, transcript p. 164). She was able to identify "Baldy"

as the shooter because she had "seen him around. . .in the neighborhood and stuff. . . ." (*Id.*, transcript p. 165). She previously identified the shooter as "Bald head," and confirmed that other people in the neighborhood had shaved heads (*Id.*). She testified that after the shooting she was shown a photo pak lineup, and she was unable to identify the shooter from those photographs (*Id.*, transcript pp. 165-66).

On re-direct examination Miller identified Petitioner as the shooter (*Id.*, transcript pp. 166-67). She explained that when she was shown the photo pak, she thought that she saw "Baldy's" photograph, but she told the detective that "Baldy's" appearance had changed, and that she was not comfortable saying that the shooter was the man in that photograph (*Id.*, transcript pp. 167-68). However, she was positive that the shooter was the man she identified in the courtroom, *i.e.*, Petitioner (*Id.*, transcript p. 168).

On September 3, 2009, Miller gave a sworn statement to Officer McCoy (Respondent's Ex. 6, record p. 133). According to the report, Miller stated that as she was walking home she saw a man being chased by "Bald head." (*Id.*). She saw "Bald head" shooting at the other man and heard six shots (*Id.*). She stated that she knew "Bald head" for a long time because she used to buy crack cocaine from him (*Id.*). She said that "Bald head's" first name is Johnnie, and indicated where he lived (*Id.*).

Miller gave a second sworn statement that day to Officer Lippold (*Id.*, record p. 137). According to that report, Miller stated that while walking in the apartments she heard a gunshot then saw one black male running while being chased by another black male holding a handgun (*Id.*). The man shot at the other approximately seven times (*Id.*). She saw the shooter and it looked like "Baldy," who is a drug dealer in the area, and whom she had known for years (*Id.*).

Miller also provided a written statement that day in which she recounted what she had seen (*Id.*, record p. 138).  In that statement, she identified the shooter as "Baldie."  (*Id.*).

On November 29, 2009, Miller testified during a deposition (*Id.*, record pp. 149-51).  She stated, in pertinent part, that she knew Petitioner "from being around in the apartment, not personally, though."  (*Id.*, record p. 149).  She would see him around the apartment complex approximately 2 or 3 times each week, and sometimes he would "hang[] out" with her son-in-law "over on 29th Street"  (*Id.*, transcript pp. 149-50).  She would refer to Petitioner as "Bald head, Baldy, several names."  (*Id.*, transcript p. 150).

Miller's prior statements and deposition testimony are consistent with her trial testimony.  At worst, there were minor inconsistencies.  To the extent Petitioner contends that defense counsel should have impeached Miller's trial testimony that she knew Petitioner because she had "seen him around. . .in the neighborhood and stuff. . . ." with her prior statement that she knew him because he used to sell her crack cocaine, counsel was not deficient in failing to impeach Miller with that statement.  That statement would have been harmful to Petitioner because it would have brought his history of dealing drugs to the jury's attention.

There are alternative methods to impeaching a witness other than using prior inconsistent statements.  Defense counsel effectively impeached Miller by asking her about her prior felony convictions and inability to identify Petitioner from the photo pak despite allegedly knowing him, getting her to admit that "a lot of guys" in the neighborhood had shaved heads, eliciting testimony that she gave an inaccurate physical description of the shooter to officers, and calling into question her ability to observe the events by getting her to admit that she was "some distance away" from the shooting, and her primary concern at the time "was protecting [her] nephew."  (Respondent's Ex.

8, Vol. II, transcript pp. 161-66).

The state post-conviction court's decision that defense counsel was not deficient in his cross-examination of Miller, Williams, and White was not objectively unreasonable. Accordingly, Ground Six does not warrant federal habeas relief.

**Ground Seven:** **INEFFECTIVE ASSISTANCE OF COUNSEL FAILURE TO DEVELOP A SINGLE COHERENT THEORY OF DEFENSE AND GAVE HARMING CLOSING ARGUMENT COMMENTS**

Ground Seven presents two sub-claims: 1) counsel was ineffective during closing argument in conceding that Petitioner was guilty of trying to rob the victim; and 2) counsel was ineffective in failing "to develop his misidentification defense. . .when he agreed with the state not to allow evidence of Leslie Jones['] gang affiliation be heard in front of the jury." Petitioner contends that there was no evidence that he was a gang member, and counsel knew that Officer Pecora stated that Jones was affiliated with a gang, and that she was concerned that the shooting might have been the result of a rivalry between Jones' gang and another gang. Petitioner argues that had counsel presented evidence that Jones was shot because he was a gang member, it would have supported his defense of misidentification.

These claims were presented in state court in Ground Three of Petitioner's amended Rule 3.850 motion (Respondent's Ex. 6, record pp. 185-88). In denying the claims after the evidentiary hearing, the state post-conviction court stated:

> In claim three, Defendant alleges ineffective assistance of counsel where counsel "had a do nothing strategy, and did little, or no pretrial investigation." Defendant alleges counsel failed to depose Markese White and failed to contest the State's motion in limine. Defendant further alleges that, during closing arguments, counsel failed to explore identification discrepancies brought out during trial and counsel implied Defendant was guilty of trying to rob the victim. As to the motion in limine, Defendant testified at the evidentiary hearing that trial counsel agreed with the State not to introduce evidence about the victim's gang

27

affiliation. (*See* Transcript, Aug. 13, 2013, pp. 43-44).

. . .As to the motion in limine, Mr. James testified that it was trial strategy not to introduce evidence about the victim's gang affiliation because evidence could have then come out that Defendant was a gang "assassin." (*See* Transcript, Aug. 13, 2013, p. 92). The Court finds Mr. James testimony credible and finds that Defendant has not satisfied his burden of showing deficient performance as to this portion of his claim three. As to the motion in limine, the Court also finds that [sic] that Defendant has not demonstrated prejudice as Defendant benefitted from keeping this information from the jury.

As to the portion of the claim regarding trial counsel's closing arguments, Mr. James testified that he presented a misidentification defense and that he did not admit Defendant's guilt as to any other crime. (*See* Transcript, Aug. 13. 2013, pp. 92-93). Mr. James testified that in arguing the State had overcharged the attempted murder crime, he never conceded Defendant's guilt to a robbery and his alternative argument was not inconsistent with the misidentification defense. (*See* Transcript, Aug. 13, 2013, p. 93). Upon further review of the record, the Court finds that the trial transcript supports Mr. James' testimony. (*See* Trial Transcript, pp. 376- 390, attached). The transcript reveals that before arguing the crime was overcharged, Mr. James explicitly stated that Defendant did not commit the crime. (*See* Trial Transcript, p. 377, attached). After arguing the crime was overcharged, Mr. James presented, in detail, the defense's misidentification arguments. (*See* Trial Transcript, pp. 381-387, attached). The Court finds Mr. James' testimony credible and supported by the record, and further finds that Defendant has not demonstrated deficient performance as to this portion of claim. **Accordingly, Defendant is not entitled to relief on claim three.**

(Respondent's Ex. 8, Vol. I, record pp. 348-49) (emphasis in original).

### A. Counsel did not concede that Petitioner was guilty of robbery

Petitioner's contention that during closing argument counsel conceded that Petitioner was guilty of robbery is belied by the record. Petitioner appears to support his contention with counsel's statement "[i]t is a robbery not an attempted murder." (Respondent's Ex. 8, Vol. IV, record p. 743). Counsel, however, did not state that it was Petitioner who attempted to rob the victim. Rather, viewing the entirety of counsel's closing argument, counsel was arguing that whoever the person

was that was chasing the victim, that person was not attempting to murder the victim but instead was trying to rob him (*Id.*, record pp. 742-44). Counsel stated "[t]his was an attempt according to the evidence to rob Mr. Jones" not an attempted murder (*Id.*, record p. 744), and reminded the jury that "Mr. Jordan did not do this however" (*Id.*, record p. 742), and "this was not Mr. Jordan." (*Id.*, record p. 744).

Counsel never conceded or implied that Petitioner was guilty of robbery. Accordingly, the state post-conviction court's determination that Petitioner failed to demonstrate deficient performance and prejudice with regard to this claim was neither contrary to *Strickland* nor based on an unreasonable determination of the facts.

**B. Counsel did not render deficient performance in deciding to not oppose the State's motion in limine to exclude evidence of the victim's gang affiliation**

During trial defense counsel did not oppose the State's motion in limine requesting the court exclude any evidence of the victim's gang affiliation (Respondent's Ex. 8, Vol. II, transcript pp. 98-99). Counsel testified during the evidentiary hearing on Petitioner's Rule 3.850 motion that his decision to not oppose the motion in limine was strategic; he was concerned that if evidence of the victim's gang affiliation was presented, it would "open the door" to evidence that showed Petitioner was an "assassin" for a gang, and argument that his motive in shooting the victim was "to fulfill some kind of contract maybe." (Respondent's Ex. 8, Vol. I, record p. 449). The state post-conviction court found counsel's testimony credible (*see id.*, record p. 348) despite Petitioner's testimony that he was "not affiliated with a gang," and counsel knew that he was "not a gang member." (*Id.*, record p. 401).

In denying this ineffective assistance of counsel claim, it is apparent that the state

post-conviction court accepted trial counsel's testimony that there was evidence that Petitioner was an "assassin" for a gang over Petitioner's testimony that he was not a gang member. This court must defer to the state court's finding of fact, *see* 28 U.S.C. § 2254(e)(1), because "'[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.'" *Nejad v. Attorney Gen., State of Georgia*, 830 F.3d 1280, 1292 (11th Cir. 2016) (quoting *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011)). This deference applies to a credibility determination that resolves conflicting testimony. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the petitioner's.); *cert. denied*, 526 U.S. 1047 (1999). And the state court's credibility determination is presumed correct. *See Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are. .. .entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995).

Petitioner presents no basis for rejecting the state court's credibility determination and fails to overcome the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Clear and convincing evidence is a 'demanding but not insatiable' standard, requiring proof that a claim is highly probable." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1258 (11th Cir. 2013) (quoting *Ward v. Hall*, 592 F.3d 1144, 1177 (11th Cir.2010)). "[H]ighly probable" is a standard that requires "more than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Ward*, 592 F.3d at 1177 (quotation marks omitted).

Petitioner has failed to meet this burden. His self-serving testimony, unsupported by any other evidence, is not clear and convincing evidence that he was not a gang member. *See, e.g.,*

*Baher v. Phillips*, 2009 WL 1457179, at *3 (S.D.N.Y. May 26, 2009) (denying habeas relief because self-serving affidavit did not present clear and convincing evidence to override state court's factual finding).

Giving deference to the state post-conviction court's factual finding, defense counsel's strategy to not oppose the motion in limine was reasonable in light of evidence of Petitioner's affiliation with a gang. Evidence that Petitioner and the victim were in rival gangs, and Petitioner was an "assassin" for his gang, would have provided the motive for Petitioner to shoot the victim. In light of these circumstances, counsel's strategic decision is virtually unassailable. *See Strickland*, 466 U.S. at 690 ("Strategic choices made after a thorough investigation are virtually unassailable.").

In sum, Petitioner has not established that no reasonable attorney would have chosen to not oppose the State's motion in limine. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.2000) (en banc) ("And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

The state courts' adjudication of this claim was not contrary to *Strickland*, nor was it based on an unreasonable determination of the facts presented in the state court proceeding. Accordingly, Ground Seven is denied pursuant to 28 U.S.C. § 2254(d).

**Ground Eight:** **INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT**

Petitioner contends that counsel was ineffective in failing to object to prosecutorial misconduct. First, he alleges that during closing argument the prosecutor improperly misled the jury to believe that forensic evidence tied Petitioner to the gun and bullets that were used to shoot the victim. Second, he alleges that the prosecutor misled the jury to believe that Miller was unable to

identify Petitioner as the shooter from the photo pak because he appears smaller in person than he appeared in the photograph. Petitioner appears to challenge the following comments by the prosecutor during closing argument:

> Now with regard to her photopack lineup identification. As you see the State respectfully submits to you, you have eyes in your head when you actually look at Mr. Jordan in court and you have had an opportunity to look at him and he testified from the witness stand he does appear smaller in person than you see from those
> photograph [sic].

> He looks to have a bigger head in the photographs and in the crime scene photographs he looks like he's got a big, bulky build but it does not reflect his actual size when you take a look at him and that is relevant with regard to Maria Miller's identification of him. She knew him from the past. When seeing him in person has identified him as the person who shot Leslie Jones that is a little bit different than looking at the photographs in this case and the State respectfully submits to you and you heard the testimony of the detective on this issue that she was looking right at that photograph and she said it looks bigger and that is why she didn't sign it. That is correct, it does look bigger.

***

> The bullets in this case show that they were fired from one gun, the gun that was in his hands and that he had two to three hours to ditch and get rid of before he was actually apprehended by the police.

> The Tampa police department [sic] did a good job in this case. Relatively speaking they got the defendant in custody but there was a gap in time in between when they got him and when he committed the crime approximately two to three hours and you heard testimony with regard to the gunshot residue report in this case. No GSR in his hands however; it's right in the report as to the reasons why. If he wipes his hands or touches an object at any time in those two hours by his testimony he claims he did so and in fact he was seen by the officers at the time of his arrest holding a cell phone that's enough to wipe the gunshot residue off his hands.

> What was he also seen doing at the time of arrest? Sweating profusely, again something that is going to get gunshot residue off your hands. Not only that there are certain types of ammunition and again it's hard to tell based on just the casings themselves but there are certain types of ammunition that don't show gunshot residue at all so that is right in the report.

(Respondent's Ex. 8, Vol. IV, record pp. 759-60, 766-67).

These claims were raised in state court in Ground Five of Petitioner's amended Rule 3.850

motion (Respondent's Ex. 6, record pp. 191-95). In denying Ground Five following the evidentiary

hearing, the state post-conviction court stated:

> In claim five, Defendant alleges ineffective assistance of counsel for failing [sic] object to the State's improper comments during closing arguments. Specifically, Defendant alleges that the State took on the role of gunshot analyst and asserted its opinion as to why Defendant did not have gunshot residue on his hands. Defendant alleges that a gunshot expert did not testify at his trial and there was nothing associating Defendant with gunshot residue.
>
> At the evidentiary hearing, Mr. James testified both parties agreed to introduce an FDLE report as to gunshot residue because it contained information relevant to both sides. (*See* Transcript, Aug 13, 2013, pp. 81-82). The FDLE report was introduced into evidence at the evidentiary hearing as Defense Exhibit 9. (*See* Transcript, Aug. 13, 2013, p.79, 84-85; FDLE Report, attached). Mr. James testified that the report was favorable to the defense to the extent that the report revealed Defendant did not have gunshot residue on his hands. (*See* Transcript, Aug. 13, 2013, p. 82). Mr. James testified that he did not think the comments made by the State during closing were inappropriate and he was focused on arguing the lack of gunshot residue. (*See* Transcript, Aug. 13, 2013, pp. 95-96).
>
> Upon further review of the record, the Court finds that the FDLE report indicates that gunshot residue was not found on Defendant's hand. (*See* FDLE Report, attached). It further indicates that an absence of gunshot residue may occur if "GSR deposited on the hands was removed prior to sampling." (*See* FDLE Report, attached). At trial, the State tendered witness Wesley Zackery as an expert in latent print identifications. (*See* Trial Transcript, pp. 289-290, 314, attached). Mr. Zackery testified, in part, that a person perspiring too much or too little could have an effect on latent prints. (*See* Trial Transcript, pp. 290-291, attached). In its closing arguments, the State argued that the gunshot residue could have been wiped off or could have been affected by Defendant sweating profusely. (*See* Trial Transcript, pp. 402- 403, attached).
>
> The Court finds the State's argument that sweating profusely is "something that is going to get gunshot residue off your hands" is not based on evidence presented at trial. Mr. Zackery's testimony about sweating profusely had to do with leaving latent prints rather than the absence of gunshot residue. Additionally, while the FDLE report indicates that the absence of gunshot residence [sic] may be a result of removing it prior to sampling, it does not explicitly say that excessive

sweating will remove it. Nevertheless, in light of the overwhelming evidence identifying Defendant as the shooter, the Court does not find that Defendant has met his burden in demonstrating prejudice.

First, Markese White identified Defendant as the shooter. (*See* Trial Transcript, pp. 136-139, 153-156, attached). Maria Miller testified at trial that while she could not pick Defendant's photo out of the photopak, she recognized the shooter and identified Defendant in court as the shooter. (*See* Trial Transcript, pp. 164-168, attached). Additionally, Octavia Williams testified that she saw Defendant walking near the crime scene saying "we just got that [person]." (*See* Trial Transcript, pp. 191- 192, attached). Ms. Williams identified Defendant in court as the person she saw at the crime scene. (*See* Trial Transcript, pp. 192-193, attached). Thus, two people identified Defendant as the shooter and a third person put Defendant near the crime scene making an incriminatory statement. Additionally, the FDLE report indicates that "[e]xcessive debris on the sample stub(s) precluded examination of the complete defined sample area." (*See* FDLE report, attached). Given the witnesses' testimony, in conjunction with the portions of FDLE report indicating the gunshot residue could have been removed prior to testing and excessive debris interfered with a complete examination, the Court finds that Defendant has not demonstrated prejudice that undermines the confidence of the trial outcome. *See Rimmer v. State*, 59 So. 3d 763, 777-778 (Fla. 2010). **Accordingly, Defendant is not entitled to relief on claim five.**

(Respondent's Ex. 8, Vol. I, record pp. 349-51) (emphasis in original).

### A. Counsel was not deficient in failing to object to the prosecutor's comments regarding Miller's failure to identify Petitioner in the photo pak

Officer McCoy testified that Miller was unable to unequivocally identify Petitioner in the photo pak because "[s]he said [Petitioner] is smaller than the person in the photopack. She couldn't be 100 percent sure exactly what she said because he is smaller." (Respondent's Ex. 8, Vol. III, record p. 632). On cross-examination Miller testified that she was unable to identify the shooter from a "photo lineup." (Respondent's Ex. 8, Vol. II, record transcript pp. 165-66). On re-direct examination she testified that when she looked at the photo pak she thought she saw Petitioner, but she was not "comfortable making an identification from that photograph" because "his appearance had changed." (*Id.*, record pp. 167-68). Accordingly, the prosecutor's comments that Miller did not

identify Petitioner from the photo pak because Petitioner appeared bigger in the photograph than when she had seen him in person was not improper. Rather, it was fair comment on the evidence. *See Griffin v. State*, 866 So.2d 1, 16 (Fla.2003) ("Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment."). Defense counsel therefore was not deficient in failing to object to these comments.

**B. Petitioner has failed to show that he was prejudiced by counsel not objecting to the prosecutor's comments regarding the lack of gun residue**

During closing the prosecutor argued, in pertinent part, that the gun residue test on Petitioner's samples may have been negative because Petitioner could have wiped his hands clean or held other objects during the two to three hours between when he shot the victim and when he was arrested, the ammunition used does not show gun residue, or the residue came off Petitioner because he was sweating profusely (Respondent's Ex. 8, Vol. IV, record p. 767). The statements that the gun residue test may have been negative because the residue may have been removed from Petitioner's hands, or the ammunition did not have the elements necessary to identify gun residue, were based on the report of the gun residue test, which stated in pertinent part:

The absence of GSR results when:

1. The individual sampled was not exposed to a source of gunshot residue.
2. GSR deposited on the hands was removed prior to sampling.
3. The ammunition used did not contain the elements necessary for the identification of GSR.

(Respondent's Ex. 8, Vol. I, record p. 527). Accordingly, these statements were fair comment on the evidence.

The report, however, did not indicate that the absence of residue may result from profuse sweating (*Id.*). And although the State's expert witness, Wesley Zackery, testified that if a person's

hand is "perspiring too much" it may not leave a fingerprint on an object, he did not testify that "profuse sweating" may remove gun residue from a person's hand (Respondent's Ex. 8, Vol. III, record pp. 655-56). Accordingly, the prosecutor's comment that "[s]weating profusely. . .is going to get gunshot residue off your hands" was not based on facts admitted as evidence.

Even if counsel's performance could be considered deficient in failing to object to this single comment that was not supported by the evidence, Petitioner has failed to demonstrate that the state court's determination that he failed to show prejudice was contrary to *Strickland*, or based on any unreasonable findings of facts. As the state post-conviction court found, even if the prosecutor's comment was objectionable, there was evidence, other than profuse sweating, that explained why the gun residue test may have been negative, including the possibility that the residue was wiped off Petitioner's hand, the ammunition did not contain the elements necessary to identify gun residue, and excessive debris on the samples interfered with a complete examination. Moreover, there was substantial eyewitness testimony identifying Petitioner as the shooter. White and Miller testified that they knew Petitioner from seeing him multiple times at the apartment complex, and they saw him holding a gun and shooting while chasing the victim. Another witness, Williams, testified that she too knew Petitioner from the apartment complex, and after she heard the shooting, she saw Petitioner and heard him state that "we just got that fuck n*****." Finally, the state trial court remedied any potential harm from the prosecutor's comment by instructing the jury that the attorneys' arguments "do not constitute what the facts of this case are. . ." (Respondent's Ex. 8, Vol. IV, record p. 734), and that "[i]t is to this evidence introduced in this trial and to it *alone* that you are to look for that proof." (*Id.*, record p. 781) (emphasis added). *See United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir.2009) ("Because statements and arguments of counsel are not evidence,

improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered." (quotation omitted)).  Based on the strong evidence against Petitioner and the trial court's instructions, this Court cannot find that there is a reasonable probability of a different outcome at trial had counsel objected to the prosecutor's comments.

The Court therefore finds that the state courts' denial of this claim was neither contrary to *Strickland* nor based on an unreasonable determination of the facts. Accordingly, Ground Eight does not warrant relief.

Any of Petitioner's claims not addressed in this Order have been determined to be without merit.

Accordingly, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** is directed to enter judgment accordingly and close this case.

3. This Court should grant an application for a Certificate of Appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Petitioner cannot make this showing.[6]  Accordingly, a Certificate of Appealability is **DENIED** in this case.  And because Petitioner is not entitled to a Certificate of Appealability, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on August 26 2019.

---

[6]Pursuant to Rule 11 of the Rules Governing Section 2254 Cases In the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Petitioner *pro se*
Counsel of Record